```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION

HELEN O'BRYANT, INDIVIDUALLY,      §
AND AS REPRESENTATIVE OF           §
THE ESTATE OF COURTENAY            §
O'BRYANT,                          §
                                   §
          Plaintiff,               §
                                   §
v.                                 §       CIVIL ACTION NO. H-08-1880
                                   §
WALKER COUNTY and                  §
DEPUTY OFFICER TIMOTHY             §
LEE WATSON,                        §
                                   §
          Defendants.              §
```

## MEMORANDUM OPINION

Pending before the court[1] is Defendants' Motion to Dismiss (Docket Entry No. 4). The court has considered the motion, all relevant filings, and the applicable law. In Plaintiff's response to the motion, she alternatively moved for leave to amend her complaint. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion for leave to amend is **DENIED**.

### I. Case Background

This civil rights action arises out of a police stop of Courtenay O'Bryant ("Courtenay") by Walker County deputy sheriff Timothy Lee Watson ("Watson"). Plaintiff sues Watson and Walker County on behalf of herself and her son, decedent Courtenay, for

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 17.

the violation of Courtenay's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings state law claims for assault, battery, intentional infliction of emotional distress ("IIED"), and negligence.

The following allegations are taken from Plaintiff's Original Complaint. On June 16, 2006, Watson stopped Courtenay's vehicle for a routine seatbelt violation.[2] Watson requested Courtenay's identification.[3] Courtenay complied and Defendant Watson returned to his vehicle to run a background check on Courtenay.[4] Upon returning to Courtenay's car, Defendant Watson accused Courtenay of swallowing drugs.[5] According to Plaintiff, Watson then attacked Courtenay with a blunt object, choked him, handcuffed him and placed him in the back seat of the police vehicle.[6]

Plaintiff claims that as a result of Watson's attack, Courtenay sustained injuries to his neck and face, including a fracture "to the left side of his cartilage."[7] Plaintiff complains that Watson treated Courtenay at the scene for his injuries in a

---

[2]   Plaintiff's Original Complaint, Docket Entry No. 1, p. 2 (unnumbered).

[3]   Id.

[4]   Id.

[5]   Id.

[6]   Id. at pp. 2-3 (unnumbered).

[7]   Id. at p. 3. This allegation is not explained.

careless and reckless manner, and, instead of taking Courtenay to the hospital for immediate treatment of his injuries, Watson put Courtenay in the back of his police car while he performed background checks on the passengers in Courtenay's vehicle.[8] Courtenay later died; the cause of death is unknown.[9]

On June 12, 2008, Plaintiff filed this suit against Watson and Walker County.[10] Defendants filed a motion to dismiss, raising a number of defenses to the suit.[11]

## II. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Cornish v. Corr. Servs. Corp., 402 F.3d 545, 548 (5th Cir. 2005). Dismissal of a claim is improper unless it is beyond doubt that the plaintiff will be unable to prove the necessary facts in support of the allegations to entitle the plaintiff to relief. Id. at 549.

## III. Analysis

---

[8] Id.

[9] Id. at pp. 3-5 (unnumbered).

[10] Id. at p. 1 (unnumbered).

[11] Defendants' Memorandum in Support of Their Motion to Dismiss, Docket Entry No. 5.

**A.   Section 1983 Claims**

A plaintiff can establish a prima facie case under Section 1983 by alleging: 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law.  Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).

**1.   Qualified Immunity**

Government officials, sued in their individual capacities, are protected by qualified immunity from Section 1983 suits for actions performed in the exercise of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Texas v. Walker, 142 F.3d 813, 818 (5th Cir. 1998).  In order to overcome an assertion of qualified immunity, a plaintiff bears the initial burden of showing that the officer's conduct violated a constitutional or statutory right.  Hope v. Pelzer, 536 U.S. 730, 736 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001); Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003).  The inquiry ends if the allegations do not support a finding of constitutionally-impermissible conduct.  Saucier, 533 U.S. at 201; Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).

If, however, the plaintiff satisfies this initial burden, the court must then determine whether the right was clearly established

at the time of the violation. Hope, 536 U.S. at 739; Saucier, 533 U.S. at 201; Williams, 352 F.3d at 1002; Hare v. City of Corinth, Miss., 135 F.3d 320, 325, 326 (5th Cir. 1998)("Hare II"). A legal right is "clearly established" if pre-existing law sufficiently defines the right so that a reasonable public official would understand whether his actions were constitutional in the situation confronting him. Hope, 536 U.S. at 739; Williams, 352 F.3d at 1002-03. Ultimately, if the legal rules are sufficiently clear, then a plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. See Saucier, 533 U.S. at 208; Hare II, 135 F.3d at 326.

At the motion to dismiss stage, a Section 1983 cause of action survives a qualified immunity challenge if the allegations in the complaint evidence "an objectively unreasonable violation of a clearly established right." Shipp v. McMahon, 199 F.3d 256, 261 (5th Cir. 2000). If, on the other hand, the evidence viewed most favorably to the nonmovant gives rise to a difference of opinion as to the lawfulness of the action among reasonably competent officers, the police officer is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986).

In this instance, Plaintiff alleges Watson used excessive force on Courtenay and was deliberately indifferent to Courtenay's serious medical needs.

**a. Right to be Free from Excessive Force**

Claims that a police officer used excessive force during an arrest or an investigatory stop are analyzed under the Fourth Amendment protection against unreasonable seizures of the person. Graham v. Connor, 490 U.S. 386, 388, 394-395 (1989); Mace, 333 F.3d at 624; Stroik v. Ponseti, 35 F.3d 155, 157 (5th Cir. 1994); Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993). "[I]n order to state a claim for excessive force in violation of the constitution, a plaintiff must allege (1) an . . . injury,[12] which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Spann, 987 F.2d at 1115 (internal quotation marks and alterations omitted); see also Stroik, 35 F.3d at 157.

The court carefully examines the facts and circumstances confronting an officer in order to decide whether his actions are objectively reasonable. Graham, 490 U.S. at 396; see also Saucier, 533 U.S. at 207; Mace, 333 F.3d at 624. "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . ." Graham, 490 U.S. at 396; see also Saucier, 533 U.S. at 208. An officer has not committed a constitutional violation if he used more force than was actually necessary if he reasonably, albeit mistakenly, believed that

---

[12] The Fifth Circuit in Spann avoided the issue of whether an injury must be "significant" in order to state a Section 1983 claim for excessive force under the Fourth Amendment. See Spann, 987 F.2d at 1115 n.7. Since that decision, the Fifth Circuit has affirmatively dispensed with the requirement that the injury be significant or severe. See Petta v. Rivera, 143 F.3d 895, 902 (5th Cir. 1998); Harper v. Harris County, Tex., 21 F.3d 597, 600 (5th Cir. 1994).

6

circumstances required the amount of force he used. <u>Saucier</u>, 533 U.S. at 205, 206. The real question is not whether the force used was excessive in the abstract, but whether the force used was clearly more force than was necessary to subdue the threat. <u>Carter v. Fenner</u>, 136 F.3d 1000, 1010 (5th Cir. 1998). The court neither "second-guess[es] officers in situations in which they have to make split-second, on-the-scene decisions" about how much force to employ, nor judges the situation with the benefit of hindsight. <u>Wagner v. Bay City, Tex.</u>, 227 F.3d 316, 321 (5th Cir. 2000); <u>see also</u> <u>Saucier</u>, 533 U.S. at 205; <u>Graham</u>, 490 U.S. at 396-97; <u>Stroik</u>, 35 F.3d at 158; <u>See</u> <u>Saucier</u>, 533 U.S. at 205; <u>Graham</u>, 490 U.S. at 396; <u>Mace</u>, 333 F.3d at 625.

In this instance, Plaintiff's complaint alleges that during a routine traffic stop for a seatbelt violation, Watson attacked Courtenay without provocation, choked him, and "clobbered him with a blunt force object resulting in neck injuries . . .[,]" that contributed to Courtenay's death.[13] This is sufficient to allege a constitutional violation. <u>See</u> <u>Harper</u>, 21 F.3d at 600.[14]

Turning to the second step in the analysis, the contours of

---

[13] Plaintiff's Original Complaint, Docket Entry No. 1, p. 3 (unnumbered).

[14] Defendant argues that this case is analogous to the first choking incident analyzed by the Fifth Circuit in <u>Williams v. Bramer</u>, 180 F.3d 699 (5th Cir. 1999). The court disagrees. In <u>Williams</u>, the court determined that there was no constitutional violation because the plaintiff had not alleged a cognizable injury because he only suffered from dizziness, temporary loss of breath, and coughing. <u>Id.</u> at 704. As noted above, in the case before this court, Plaintiff alleges that Courtenay ultimately died as a result of injuries inflicted by Watson. Therefore, the cited case is distinguishable.

the right to be free from excessive force were well-defined on June 16, 2006. See, e.g., Graham, 490 U.S. at 394; Garner, 471 U.S. at 7; Stroik, 35 F.3d at 157; Spann, 987 F.2d at 1115; Fraire v. City of Arlington, 957 F.2d at 1275-76 (1992), cert. denied, 506 U.S. 973; Reese, 926 F.2d at 500 (5th Cir. 1991); Young v. City of Killeen, Tex., 775 F.2d 1349, 1353 (5th Cir. 1985).

Finally, the complaint states facts which could support a finding that Watson's actions were objectively unreasonable because the attack was unprovoked by any conduct on Courtenay's part. Watson's motion to dismiss on this claim must be denied.

**b.   Right to Reasonable Medical Care**

Arrestees and pretrial detainees have a Fourteenth Amendment due process right to "be secure in [their] basic human needs, such as medical care and safety." Hare v. City of Corinth, Miss., 74 F.3d 633, 648-49 (5th Cir. 1996) ("Hare I"); see also United States v. Gonzales, 436 F.3d 560, 573 (5th Cir. 2006); Nerren v. Livingston Police Dep't, 86 F.3d 469, 472-73 (5th Cir. 1996)(noting that "[a]n arrestee's complaint for denial of substantive due process and a pretrial detainee's complaint for denial of substantive due process are evaluated under the same standards.")

A state official's "episodic act or omission"[15] violates that right if the official acts or fails to act with subjective deliberate indifference to a detainee's needs. Jacobs v. W.

---

[15]   A different standard for evaluation is used in conditions of confinement cases. See Hare I, 74 F.3d at 644-45.

Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare I, 74 F.3d at 647-48. In other words, the defendant officer must have "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare I, 74 F.3d at 650.

The deliberate indifference standard requires action or inaction that amounts to more than negligence or even gross negligence. See Thompson v. Upshur County, Tex., 245 F.3d 447, 458-459 (5th Cir. 2001); Hare I, 74 F.3d at 649. Subjective intent to cause harm, which cannot be inferred from a failure to act reasonably, is required. Mace, 333 F.3d at 626; Hare I, 74 F.3d at 649; see also Wagner, 227 F.3d at 324.

> Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur.

Thompson, 245 F.3d at 458-59 (citing Hare I, 74 F.3d at 649-50).

Plaintiff alleges that Watson violated Courtenay's constitutional rights by failing to take him to the nearest emergency room following the altercation at the traffic stop. Plaintiff alleges that Watson possessed actual knowledge of the serious risk Courtenay's injuries posed because Watson inflicted the injuries and attempted to treat Courtenay at the scene. In addition, Plaintiff alleges that Watson ignored Courtenay's

injuries while he performed background checks on the passengers in Courtenay's car.  The court concludes that Plaintiff has presented sufficient facts to state a claim for deliberate indifference to Courtenay's serious medical needs as a pretrial detainee. Accordingly, the court finds that Plaintiff has satisfied the first prong of the qualified immunity analysis.

Having found that Plaintiff survives the first step of the qualified immunity analysis, the next step of the analysis is to determine whether the constitutional parameters were clearly established at the time of the incident.  In Hare I, issued in 1996, the Fifth Circuit provided considerable shape to the law in this area, explaining prior law and clearly stating that officials will be liable for episodic acts or omissions resulting in the violation of a pretrial detainee's constitutional rights if they act with deliberate indifference to the detainee's risk of serious harm.  Hare I, 74 F.3d at 650.  Therefore, the law concerning pretrial detainees' right to medical care was clearly established when this incident occurred in June of 2006.

The final step of the qualified immunity analysis asks whether the acts of the officer, in this particular instance, Watson, were objectively unreasonable within the applicable legal context.  See Saucier, 533 U.S. at 208; Hare II, 135 F.3d at 326.

In this instance, the complaint states facts which ultimately may support a finding that Watson acted unreasonably in failing to

10

provide prompt medical care to Courtenay.  In addition to the unfortunate death of Courtenay, Plaintiff alleges in her complaint serious injuries that would have led a reasonable officer to conclude that Courtenay suffered significant injuries following his arrest and needed immediate medical attention.

For the purposes of a motion to dismiss, Watson has not met his burden to demonstrate that Plaintiff can prove no set of facts to overcome a qualified immunity defense.  Accordingly, at this stage of the lawsuit the court must deny Watson's claim of qualified immunity.

## 2.   County Liability[16]

A county does not enjoy immunity from suit under Section 1983, but cannot be held liable unless it had a policy which caused the constitutional injury.  <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 166 (1993).  In order for a plaintiff to impute liability to a county for the actions of its police officers, the plaintiff must proffer some evidence, more than a scintilla, that the municipality had a policy or custom which resulted in constitutional injuries.  See <u>Monell</u>, 436 U.S. at 694.  The official policy or custom must be the cause in fact of or "the moving force behind" the constitutional

---

[16]  A claim against a government employee in the person's official capacity represents the same as claim as one against the governmental entity. <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 n.55 (1978).  The discussion in this section applies to Plaintiff's Section 1983 claim against Defendant Watson in his official capacity as well as that against Defendant Walker County.

11

violations alleged by the plaintiff.  Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997).  The burden on the plaintiff is to "identify the policy, connect the policy to the county itself and show that the particular injury was incurred because of the execution of that policy."  Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984), cert. denied, 472 U.S. 1016 (1985).

Although a Section 1983 action against a county is not subject to a heightened pleading standard, a plaintiff must comply with Federal Rule of Civil Procedure 8(a) by providing sufficient facts to establish the grounds for relief.  Leatherman, 507 U.S. at 164.

Walker County contends that Plaintiff's Section 1983 claim fails because Plaintiff has not sufficiently alleged a policy of Walker County that contributed to Courtenay's injuries or death.  In response, Plaintiff alleges that Walker County had a policy of not providing immediate care to a person detained by its officers and that it was customary for Walker County to fail to retrain or discipline officers after using excessive force on suspects.  Plaintiff's complaint states "[t]he Sheriff['s] Department also failed in their duty to provide immediate medical assistance to [Courtenay]; indicating a custom, policy, practice and procedure by the Walker County Sheriff['s] Department."[17]  In addition, the complaint states that "[t]he Walker County Sheriff['s] Department

---

[17]   Plaintiff's Complaint, Docket Entry No. 1, p. 4.

has a practice, policy, custom[] and procedure of not disciplining [or] retraining officers who use excessive force on suspects, [who] violate traffic stop[] procedure or any policies regarding the safe apprehension of suspects."[18]

In this instance, Plaintiff has alleged at least two policies that could have contributed to Courtenay's injuries and death. Therefore, at this early stage of the lawsuit, Walker County's argument that Plaintiff's complaint fails to state a claim under Section 1983 must be denied.

**B.   State Law Claims**

As for the state law claims, Plaintiff asserts a claim for assault, battery, IIED, and negligence.  In response, Watson argues that he is entitled to official immunity from liability, and Walker County argues that the claims are barred by the Texas Tort Claims Act.

**1.   Official Immunity**

In Texas, "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  As an affirmative defense, all three elements must be established by the party asserting it.  Id.  The good faith test is substantially the same

---

[18]   Id.

as the standard for qualified immunity in Section 1983 cases. Id. at 656. If any reasonably prudent officer in the defendant's position could have thought that the circumstances justified defendant's acts, the defendant is entitled to official immunity. Id. at 657. The test is one of "objective legal reasonableness, without regard to the officer's subjective state of mind." Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997). Unlike qualified immunity, whether the right was "clearly established" is immaterial. Shaboon v. Duncan, 252 F.3d 722, 729 (5th Cir. 2001).

Watson claims that he is entitled to official immunity on Plaintiff's claims arising under state law. This court disagrees. As outlined in the section on qualified immunity, the court has found that fact issues on both the reasonableness of the force used on Courtenay and the reasonableness of Watson's response to Courtenay's serious medical needs preclude a finding of qualified immunity on either claim. These same fact issues are present in the state law claims of assault, battery, and IIED.[19] Therefore, Watson's motion to dismiss the state law claims is denied.

**2.    Texas Tort Claims Act**

The Texas Tort Claims Act ("TTCA") waives sovereign immunity in limited circumstances. Under the TTCA, a governmental unit may be held liable for:

---

[19]    As Plaintiff's claims of negligence against Watson are actually the same as the intentional torts of assault and battery, the court does not include it as a separate cause of action. See infra, B.2., p. 16.

14

>    (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>      (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
>      (B) the employee would be personally liable to the claimant according to Texas law; and
>
>    (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  The waiver of sovereign immunity does not apply to a claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.057.

To determine whether the intentional tort exception applies, the court looks at the factual allegations giving rise to the claims.  Where the essence of a claim under the TTCA arises from an intentional tort, simply characterizing the claims as negligence is insufficient to avoid application of the intentional torts exception.  See, e.g., Campbell v. City of San Antonio, 43 F.3d 973, 978 n.8 (5th Cir. 1995)(applying Texas law)("The heart of [the plaintiff's] allegations of negligent use of tangible personal property does indeed seem merely a part of a larger claim for false arrest or false imprisonment."); Callis v. Sellars, 953 F.Supp. 793, 801 (S.D. Tex. 1996)(applying Texas law)("Under Plaintiff's version of the facts, there is no suggestion that [the defendant's]

15

conduct was in any way merely 'negligent.'"); May v. Nacogdoches Mem'l Hosp., 61 S.W.3d 623, 631 (Tex. App.–Tyler 2001, no pet.)("[W]e conclude that although [the plaintiff] contended that the rape, an intentional tort, was not the gist of her pleadings, as such pleadings relate to a waiver of immunity under section 101.021, her allegations in this regard leave no other fair construction possible."); Tarrant County Hosp. Dist. v. Henry, 52 S.W.3d 434, 441 (Tex. App.–Fort Worth 2001, no pet.)("A plaintiff cannot, however, circumvent the intentional tort exception simply by pleading negligence.").

Defendant Walker County argues that the TTCA bars the claims of assault, battery and IIED. As to the intentional tort claims, this court agrees that the TTCA bars Plaintiff's claims for assault, battery and IIED against Walker County. Tex. Civ. Prac. & Rem. Code Ann. § 101.057.

Turning to Plaintiff's negligence claims, Walker County argues that the negligence claims are actually intentional tort claims characterized by Plaintiff as negligence claims.

Plaintiff's negligence claims are as follows:

> Plaintiff allege[s] that . . . defendant committed the following acts of negligence which jointly and separately was a proximate cause to the death of [Courtenay].
>
>     a) negligence in using a blunt force
>
>     b) negligence causing neck injuries
>
>     c) negligence in maintenance of the blunt object and committing other acts of omission and commission which

16

constituted negligence and were a proximate cause to the death of [Courtenay].[20]

None of the above-stated claims give rise to a negligence cause of action in light of Plaintiff's allegations that Courtenay's injuries were the result of being "clobbered" by Watson, choked by Watson and being struck by Watson with a blunt object. Plaintiff cannot circumvent the intentional tort exception to waiver of liability by simply pleading negligence when the events on which her claims are based are actually intentional torts. See Estrada v. City of San Benito, Tex., No. B-08-116, 2009 WL 54895 (S.D. Tex. Jan. 8, 2009); Little v. Schafer, 319 F.Supp. 190, 192 (S.D. Tex. 1970).

Because the facts alleged by Plaintiff do not give rise to a negligence cause of action, Defendants' motion to dismiss Plaintiff's negligence claims against Defendant Walker County and Defendant Watson is granted.

Plaintiff requests leave to amend her complaint if any portion of the Defendants' motion to dismiss is granted. Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is not, however, automatic. Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993).

In deciding whether to grant leave to file an amended

---

[20] Plaintiff's Original Complaint, Docket Entry No. 1, p. 6.

pleading, the court may consider, among other things, the futility of the amendment. Id. In this instance, Plaintiff's attempts to amend would be futile, the flaws that required dismissal of Plaintiff's intentional tort claims against Defendant Walker County and negligence claims against Walker County and Watson cannot be cured by amendment. Therefore, Plaintiff's request for leave to amend is denied.

### IV. Conclusion

Based on the foregoing, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff's claims against Walker County for assault, battery, and IIED are **DISMISSED**. Plaintiff's claims against Walker County and Watson for negligence are **DISMISSED**. Plaintiff's motion for leave to amend is **DENIED**.

**SIGNED** at Houston, Texas, this 29th day of January, 2009.

Nancy K. Johnson
United States Magistrate Judge