IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HELEN O'BRYANT, INDIVIDUALLY,      §
AND AS REPRESENTATIVE OF           §
THE ESTATE OF COURTENAY            §
O'BRYANT,                          §
                                   §
          Plaintiff,               §
                                   §
v.                                 §        CIVIL ACTION NO. H-08-1880
                                   §
WALKER COUNTY and                  §
DEPUTY OFFICER TIMOTHY             §
LEE WATSON,                        §
                                   §
          Defendants.              §

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] is Defendants' Motion for Partial
Summary Judgment (Docket Entry No. 25).  The court has considered
the motion, all relevant filings, and the applicable law.  For the
reasons set forth below, the court **GRANTS** Defendants' Motion for
Partial Summary Judgment.

## I.  Case Background

### A.    Procedural History

This civil rights action arose from a routine traffic stop by
Walker County deputy sheriff Timothy Lee Watson ("Watson").
Plaintiff Helen O'Bryant ("Plaintiff") sued Watson and Walker

---

[1]     The parties consented to proceed before the undersigned magistrate
judge for all proceedings, including trial and final judgment, pursuant to 28
U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 19.

County on behalf of herself[2] and her son, decedent Courtenay O'Bryant ("O'Bryant"), for violations of O'Bryant's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.  See 42 U.S.C. § 1983 ("§ 1983").  Plaintiff also brought state law claims for assault, battery, intentional infliction of emotional distress ("IIED"), and negligence.  In response to Defendants' motion to dismiss,[3] the court dismissed Plaintiff's claims against Walker County for assault, battery, IIED, and negligence.[4]  Plaintiff's claim of negligence against Watson was also dismissed at that time.[5]

## B.  **Factual History**[6]

On June 16, 2006, Watson stopped O'Bryant's vehicle for a seatbelt violation.[7]  While waiting for O'Bryant to produce his identification, Watson noticed something inside the car and asked O'Bryant about it.[8]  When O'Bryant told him it was nothing, Watson

---

[2]    Plaintiff was present neither at the traffic stop nor at any of the events giving rise to this action.

[3]    Defendants' Motion to Dismiss, Docket Entry No. 21.

[4]    Memorandum and Opinion, Docket Entry No. 22.

[5]    Id.

[6]    Plaintiff affirmatively does not challenge the facts as recited by Defendants regarding the contents of the police recording of the incident.  The court therefore deems those facts admitted and uses them as the basis for this summary of the factual history.

[7]    Defendants' Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. A, Affidavit of Daniel Barrett, with attached DVD: June 16, 2006, Case #0608626, Courtenay O'Bryant, In-Car Video from Deputy Watson's Patrol Unit, provided by Walker County Sheriff's Office ("DVD"), at 14:36:18.

[8]    Id. at 14:36:50.

told O'Bryant to exit the car, pulled him out, and handcuffed him.[9]

When O'Bryant asked Watson what he was doing, Watson replied, "What's up is you've got cocaine all over your lap."[10]   O'Bryant denied having cocaine, so Watson asked him what he had in his mouth, to which O'Bryant responded, "Nothin'."[11]   Watson asked him a second time what he had in his mouth and told O'Bryant to spit it out.[12]

When O'Bryant did not comply, Watson placed his left hand on O'Bryant's throat and his right hand on the back of O'Bryant's neck, again telling him to spit out whatever he had in his mouth.[13] Watson leaned O'Bryant over the trunk of O'Bryant's car, still holding O'Bryant's neck and repeatedly telling him to spit out whatever was in his mouth.[14]   They held this position for about thirty seconds.[15]   Watson then moved O'Bryant to the ground[16] as

---

[9]     Id. at 14:36:52.  A man who appeared to be a plainclothes police officer came to assist Watson at this point and remained present to help Watson throughout the remainder of the incident.  Id.  He is not a party to this lawsuit.

[10]     Id. at 14:37:00.

[11]     Id. at 14:37:05.

[12]     Id. at 14:37:16.

[13]     Id. at 14:37:18.

[14]     Id. at 14:37:19.

[15]     Id. at 14:37:20-50.

[16]     Much of what happened for the next few minutes was out of sight of the video camera, although the audio portion can still be heard clearly.

O'Bryant yelled, "It's all out, man!"[17]  Watson again ordered him
to spit out what he had in his mouth, and O'Bryant again said he
had nothing more.[18]  Watson then asked O'Bryant why he was trying
to eat "dope," and O'Bryant responded, "Man, I ain't got no more
dope, Watson."[19]

When O'Bryant's struggling ceased, Watson began collecting
evidence.[20]  O'Bryant asked Watson what the charges were against
him, and Watson said O'Bryant would be charged with possession of
cocaine and tampering with evidence.[21]  O'Bryant immediately replied
that he had no cocaine.[22]

Shortly thereafter, Watson allowed O'Bryant to stand so he
could be searched, and O'Bryant returned to view on the video
recording, standing unaided and talking.[23]  After a brief search,
O'Bryant was told to "have a seat."[24]

A few minutes later, another officer on the scene told Watson

---

[17]    Id. at 14:38:01.

[18]    Id. at 14:38:04.

[19]    Id. at 14:38:21.  The court notes that, up to this point, only two
minutes had elapsed since first contact between Watson and O'Bryant.  Defendants
state that O'Bryant knew and used Watson's name because they knew each other from
high school in Huntsville and because O'Bryant was once detained in a county jail
facility where Watson had been working as a corrections officer.  Defendants'
Motion for Summary Judgment, Docket Entry No. 25.

[20]    DVD at 14:39:36.

[21]    Id. at 14:41:02.

[22]    Id. at 14:41:02.

[23]    Id. at 14:41:34.

[24]    Id. at 14:42:06.

that O'Bryant was vomiting in the back of the squad car.[25]   About ninety seconds later, as O'Bryant's distress increased,[26] Watson radioed for medical aid.[27]   Ambulance personnel arrived approximately six and a half minutes later.[28]   O'Bryant was transported to Huntsville Memorial Hospital and pronounced dead at 4:08 p.m.[29]

The next morning, Dr. Janis Townsend-Parchman, M.D., ("Townsend-Parchman") performed an autopsy on O'Bryant and found blunt force injuries to his neck.[30]   In addition, the toxicology report she ordered revealed elevated levels of cocaine[31] and cocaine metabolites[32] in O'Bryant's blood.   Townsend-Parchman concluded in her autopsy report that O'Bryant's manner of death was undetermined, but that he "died as the result of toxic effects of

---

[25]   Id. at 14:47:52.

[26]   This is based on the sounds and movement of the squad car.  O'Bryant cannot be seen in this portion of the video.

[27]   Id. at 14:49:24-31.  This is approximately thirteen minutes after Watson's first contact with O'Bryant and approximately eight minutes after O'Bryant is last seen on camera, standing and talking.  There is no evidence on the recording that O'Bryant ever indicated to Watson that he had swallowed cocaine or any other substance.

[28]   Id. at 14:56:01.

[29]   Defendants' Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. B, Autopsy Report, p. 1.

[30]   Id. at 1, 5. These injuries included hemorrhage of the left sternothyroid muscle, right thyrohyoid muscle, and posterior left thyrohyoid muscle, as well as a fracture in the thyroid cartilage.  Id.

[31]   2.8 milligrams per liter.  Id.

[32]   2.4 milligrams per liter of ecgonine methyl ester and 2.0 milligrams per liter of benzoylecgonine.  Id.

cocaine; the blunt force neck injuries may or may not have contributed to his death."[33]

Townsend-Parchman later testified in her deposition that there was no particular lethality to hemorrhaging in one's neck muscles and that the hemorrhages in O'Bryant's neck did not significantly impinge his airway and were not sufficiently severe to cause his death.[34]   She also opined that a thyroid cartilage fracture could lead to suffocating from laryngeal edema, but, in this case, the airway was not decreased and looked normal.[35]   Therefore, there was no evidence of any neck injury that would have been consistent with O'Bryant's manner of death.[36]

When asked whether, in all medical probability, O'Bryant's death was even remotely related to his neck injuries, she stated that she "doubted" it but could not completely rule it out because she tended to be very conservative when performing autopsies on persons who died while in police custody.[37]   However, even though there was nothing that she could point to that would make her think the neck injuries contributed to O'Bryant's death, there was a possibility, "however small," that the neck injuries may have been

---

[33]    Id.

[34]    Defendants' Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. C, Deposition of Townsend-Parchman, p. 23, 28-29.

[35]    Id. at 24-25.  As Townsend-Parchman stated, "The thyroid cartilage fracture . . . [is] a setup, but I didn't see the laryngeal edema, which would have been the follow-through."  Id. at 32.

[36]    Id.

[37]    Id. at 33.

a contributing factor.[38]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedqwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which

---

[38]   <u>Id.</u> at 40.

the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

### III.  Analysis

Defendants filed this motion for partial summary judgment solely to address those claims that Plaintiff brings in her individual capacity under the Texas Wrongful Death Act ("Act").  Tex. Civ. Prac. & Rem. Code §§ 71.001-71.012.  Section 1988(a) of Title 42 of the United States Code allows for the incorporation of state laws such as the Act into federal claims made under § 1983.

Plaintiff alleges standing under the Act based on § 71.004(b) ("The surviving . . . parents of the deceased may bring the action

. . . .").  The Act allows an action by a decedent's beneficiaries "only if the individual injured would have been entitled to bring an action for the injury if he had lived." § 71.003(a).  The defendant's wrongful act must have caused the death of the decedent. § 71.002.

Defendants have moved for summary judgment on Plaintiff's wrongful death claim on the element of causation.  Defendants argue in their motion that Plaintiff has presented no evidence establishing that action or inaction by either Watson or Walker County caused the death of O'Bryant.  Plaintiff generally alleges that Watson owed a duty of care to O'Bryant once O'Bryant was in Watson's custody, that his action in grabbing O'Bryant's throat and inaction by not sooner calling for medical assistance breached that duty, and that his actions caused the death of O'Bryant.

The court therefore examines whether there is evidence that Watson caused O'Bryant's death by failing to provide reasonable medical care or through his use of force under Plaintiff's claims of excessive force and assault and battery.[39]

## A.   Necessity of Expert Testimony to Prove Causation

Defendants argue that Plaintiff cannot establish causation without expert testimony.  Plaintiff responds that expert testimony is not required to prove causation of: 1)whether a delay in medical

---

[39]      In their briefs, no party explicitly suggests that Plaintiff's claim of IIED caused O'Bryant's death, although they generally argue whether any of Watson's actions caused his death.  The court therefore deems waived any IIED claim relating to the causation of O'Bryant's death.

care caused, contributed to, or hastened O'Bryant's death; 2) whether Watson's grabbing of O'Bryant's throat caused, contributed to, or hastened O'Bryant's death; or 3) whether Watson's grabbing of O'Bryant's throat caused O'Bryant to involuntarily swallow the cocaine. Plaintiff suggests the issue of causation in these situations can be determined by a jury's common knowledge without the requirement of expert testimony.[40]

Plaintiff claims that Watson and Walker County violated § 1983 by causing O'Bryant's death through deliberate indifference to O'Bryant's medical needs and by use of excessive force against him. See generally Carey v. Piphus, 435 U.S. 247, 257-58 (1978) (noting that, although § 1983 does not expressly mention causation as an element, damages under the statute are compensable only if caused by deprivation of a constitutional right).

Under the Fourteenth Amendment's Due Process clause, detainees have the right "not to have their serious medical needs met with deliberate indifference on the part of confining officials." Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001). Plaintiff need not actually prove that O'Bryant suffered serious harm, however. See U.S. v. Gonzales, 436 F.3d 560, 574 (5th Cir. 2006). It is enough that O'Bryant was exposed to a substantial

_____

[40]     Plaintiff also asserts as causation issues whether Watson should have been immediately aware that O'Bryant may have swallowed a potentially deadly substance and whether Watson negligently caused a delay in the rendering of medical care. Those determinations regarding Watson's liability must be preceded by the initial question of whether the actual delay (whether negligent or not) could have caused O'Bryant's death.

risk of serious harm even if that harm never materialized.  <u>See</u> <u>id.</u>; <u>see also, e.g.</u>, <u>Gates v. Cook</u>, 376 F.3d 323, 341 (5th Cir. 2004) (holding that an Eighth Amendment prisoner/civil plaintiff did not have to show he was actually injured by exposure to raw sewage, only that the exposure posed a serious health risk).  Here, Defendants move on whether the substantial injury that O'Bryant was exposed to could have been his death, and Plaintiff must therefore provide summary judgment evidence that death could have been caused by the delay in the call for medical care.

To succeed on a § 1983 excessive force claim, a plaintiff bears the burden of showing: "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." <u>Tarver v. City of Edna</u>, 410 F.3d 745, 751 (5th Cir. 2005).  The same fact issues surrounding an excessive force claim are present in Plaintiff's state law cause of action for assault and battery.  A person commits assault and battery by: (1) intentionally, knowingly, or recklessly causing bodily injury to another; (2) intentionally or knowingly threatening another with imminent bodily injury; or (3) intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. <u>Morgan v. City of Alvin</u>, 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet. hist.).  Therefore, to survive summary

judgment on both the federal and state use of force claims, Plaintiff must provide evidence that Watson's actions resulted in O'Bryant's death.

The issue of causation should only be submitted to a jury if, under the evidence, a layperson's general experience and common sense would enable the layperson to fairly determine the causal relationship between the event and the condition. See Kallassy v. Cirrus Design Corp., 265 Fed. App'x. 165, 166, 2008 WL 341581 (5th Cir. 2008). Whether a very short delay in calling for medical attention for cocaine ingestion could have caused death is not within a layperson's general experience and common sense. Whether minor physical damage resulting from grabbing someone's throat is sufficient enough to cause death is also within the exclusive purview of an expert opinion. Finally, whether grabbing a person's throat could force that person to involuntarily swallow a mouthful of cocaine is also outside a layperson's general experience and common sense.

Plaintiff has also not presented any evidence, by expert testimony or otherwise, with which to guide the jury in its decision-making process. Plaintiff has not presented categorical scientific principles establishing that the result in question, death, is always directly traceable back to the event in question. This is true whether the "event in question" is the grabbing of O'Bryant's throat (and whether that caused him to involuntarily

swallow what was in his mouth or injured him in such a way as to cause his death) or any delay in medical care that he received.

Neither has Plaintiff presented expert testimony establishing a causal relationship to a reasonable degree of medical probability under any scenario argued by Plaintiff.  See Gutierrez v. Excel Corp., 106 F.3d 683, 689 (5th Cir. 1997) (stating that an expert opinion must rest in reasonable medical probability to constitute evidence of causation).  First, there was no expert testimony that established a causal relationship to a reasonable degree of medical probability between O'Bryant's death and a delay in receiving medical care.  See id.  Second, there was no expert testimony that established a causal relationship to a reasonable degree of medical probability between O'Bryant's death and the grabbing of O'Bryant's throat.  See id.  Townsend-Parchman stated that she could point to nothing that would make her think the neck injuries contributed to O'Bryant's death.[41]  She would not state that, in all medical probability, O'Bryant's death was caused by or even related to his neck injuries.[42]  This is clearly not enough evidence to show a causal relationship to a reasonable degree of medical probability, even if she could not completely rule out the possibility.[43]  See id.  Third, there was no expert testimony to a reasonable degree of

---

[41]    Defendants' Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. C, Deposition of Townsend-Parchman, p. 40.

[42]    Id. at 33.

[43]    Id. at 33, 40.

13

medical probability that, when Watson grabbed O'Bryant's throat, the officer caused him to involuntarily swallow a dangerous substance.  See id.

Because these issues lay outside the experience and common sense of a jury and because Plaintiff has provided no competent evidence, expert testimony or otherwise, with which to help a jury in its decision-making process, an expert opinion is required to establish causation on each of Plaintiff's theories.  Therefore, the court finds as a matter of law that expert testimony is required for Plaintiff to meet her summary judgment burden on both her federal and her state law claims.

**B.   Sufficiency of Townsend-Parchman's Expert Opinion**

The court now turns to the evidence required to establish causation.  Where a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue, judgment as a matter of law is appropriate.  Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 883 (5th Cir. 2004).  An expert opinion must rest in reasonable medical probability to constitute evidence of causation. Gutierrez, 106 F.3d at 689.  This rule applies whether the opinion is expressed in testimony or in the medical record.   Id. Reasonable probability is determined by the substance and context of the medical opinion, not on whether a particular term or phrase was used.  Id.

14

Plaintiff has not offered any competent summary judgment evidence in response to Defendants' motion for partial summary judgment or as part of any other filing. The court therefore relies solely upon exhibits submitted by Defendants.[44]   This evidence fails to demonstrate a causal relationship between Watson's acts or omissions and O'Bryant's death.

**1.   Effect of Delayed Medical Treatment**

Townsend-Parchman, Plaintiff's only expert, never testified that, had medical care reached O'Bryant a few minutes earlier, he would have survived or, even, that he would have had a better chance at survival.   See <u>Kramer v. Lewisville Mem'l. Hosp.</u>, 858 S.W.2d 397, 404 (Tex. 1993) (explaining that the Act "authorizes recovery solely for injuries that cause death, not injuries that cause the loss of a less-than-even chance of avoiding death").   No evidence was presented that, had Watson called for medical aid a few minutes earlier, the ambulance personnel could have arrived before they actually did or whether this would have changed the outcome.

Plaintiff has failed to provide evidence to a reasonable degree of medical probability that the delay in medical aid caused O'Bryant's death.   See <u>Gutierrez</u>, 106 F.3d at 689.

---

[44]   Defendants submitted three exhibits as part of their motion for partial summary judgment.  Defendants' Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. A, Affidavit of Daniel Barrett (swearing to the authenticity of the attached video and audio police recording of the traffic stop); Ex. B, Autopsy Report of O'Bryant; Ex. C, Deposition of Janis Townsend-Parchman, M.D. (including the entire deposition testimony).

### 2.   Effect of O'Bryant's Neck Injuries

Townsend-Parchman never testified that, had O'Bryant not suffered the neck injuries, he would have survived or that he would have had a better chance at survival.  See Kramer, 858 S.W.2d at 404.  She stated that she could point to nothing that would make her think the neck injuries contributed to O'Bryant's death.[45]  She would not state that, in all medical probability, O'Bryant's death was caused by or even related to his neck injuries.[46]  Even if she could not completely rule out the possibility, there is clearly not enough evidence here to show a probable cause relationship to a reasonable degree of medical probability.[47]  See Gutierrez, 106 F.3d at 689.  There was simply no evidence of any neck injury that would have been consistent with his death.[48]

Plaintiff has failed to provide evidence amounting to reasonable medical probability on the element of causation on whether O'Bryant's neck injuries caused his death.  See id.

### 3.   Involuntary Swallowing

Plaintiff next contends that, when Watson grabbed O'Bryant's throat, he may have caused O'Bryant to involuntarily swallow the cocaine that was already in O'Bryant's mouth, thereby causing

---

[45]     Defendants' Motion for Partial Summary Judgment, Docket Entry No. 25, Ex. C, Deposition of Townsend-Parchman, p. 40.

[46]     Id. at 33.

[47]     Id. at 33, 40.

[48]     Id. at 32.

16

O'Bryant's death.   Plaintiff offers no evidence on this point and only references this theory in passing in her reply brief to this motion for partial summary judgment.   Plaintiff's only expert, Townsend-Parchman, never testified that grabbing O'Bryant's throat could have caused him to involuntarily swallow the cocaine he had already voluntarily put in his own mouth.   In her testimony, she did not even allude to the possibility that one can involuntarily swallow what is in one's mouth under these circumstances.

Plaintiff has failed to provide evidence to a reasonable degree of medical probability on the element of causation on whether Watson's grabbing of O'Bryant's neck caused him to involuntarily swallow the cocaine.   See id.

## IV. Conclusion

Based on the foregoing, Defendant's motion for partial summary judgment is **GRANTED**.   The following claims for non-life-threatening injuries survive: § 1983 claims of excessive force and delayed medical care against Watson and Walker County and state law claims of assault and battery and IIED against Watson.   All claims of Plaintiff Helen O'Bryant, in her individual capacity brought through the Act, against Walker County and Watson, are **DISMISSED**.

**SIGNED** at Houston, Texas, this 21st day of September, 2009.

Nancy K. Johnson
United States Magistrate Judge